**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONALD BEASLEY, Individually And On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>TELETECH HOLDINGS, INC., KENNETH D. TUCHMAN, JOHN R. TROKA, RUTH C. LIPPER, SHIRLEY YOUNG, WILLIAM A. LINNENBRINGER, JAMES E. BARLETT, SHRIKANT MEHTA, CITIGROUP GLOBAL MARKETS INC., MORGAN STANLEY & CO., INC, and ERNST & YOUNG, LLP,<br><br>          Defendants. | <br>**CIVIL ACTION NO.** _____<br>08 CV 0913<br>JUDGE SWAIN<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED**<br><br>JAN 2 5 2008<br>U.S.D.C. S.D. N.Y.<br>CASHIERS |

## OVERVIEW

1.  This is a federal class action on behalf of purchasers of the common stock of TeleTech Holdings, Inc. ("TeleTech" or the "Company") between **February 8, 2007 and November 8, 2007,** inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"), including those who purchased shares in connection with the Company's March 30, 2007 Secondary Public Offering -- whereby Company CEO and Board Chairman, Kenneth D. Tuchman, sold 5.75 million shares of his privately owned TeleTech common stock at $36.50 per share for gross proceeds of nearly $210 million – and seek to pursue remedies under the Securities Act of 1933 (the "Securities Act").

2.  As alleged herein, in addition to issuing a materially false and misleading Registration Statement and joint Proxy-Prospectus in connection with the March 2007 Secondary Offering (the "Offering"), defendants also published a series of materially false and misleading

statements during the Class Period that defendants knew and/or recklessly disregarded were materially false and misleading at the time of such publication, and that omitted to reveal material information necessary to make defendants' statements, in light of such material omissions, not materially false and misleading.

## JURISDICTION AND VENUE

3.      Jurisdiction is conferred by §22 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77v, and §27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78aa and 28 U.S.C. §1331. The claims asserted herein arise under §§11, 12(a)(2) and 15 of the Securities Act, §§77k and 77o, and rules promulgated thereunder by the Securities and Exchange Commission (the "SEC"), and §§10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

4.      Venue is proper in this District pursuant to §22 of the Securities Act, §27 of the Exchange Act and 28 U.S.C. §1391(b), §1337 and §27 [15 U.S.C. §78aa]. Defendant TeleTech conducts significant business in this district and the Underwriter Defendants and Auditor Defendant maintain corporate headquarters in this District and much of the purported pre-offering due diligence investigation and analysis took place in this District. Many of the acts giving rise to the violations complained of herein took place in this District.

5.      In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

### Plaintiff

6.      Plaintiff **DONALD BEASLEY**, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of TeleTech at artificially inflated prices during the Class Period and has been damaged thereby.

### Corporate Defendant

7.      Defendant **TELETECH HOLDINGS, INC.** is a Delaware corporation with its principal place of business located in Englewood, CO.  According to the Company's profile on financial news Internet website Yahoo! Finance, TeleTech is a global business process outsourcing company that provides a range of "front-to-back" office outsourced solutions including customer management, transaction-based processing, and database marketing services.

### Auditor Defendant

8.      Defendant **ERNST & YOUNG LLP** is one of the world's largest accounting and auditing firms and, during the Class Period and at the time of the March 30, 2007 Secondary Offering, acted as the purported Independent Auditors of the Company.  While defendant Ernst & Young resigned from the Company on or about May 7, 2007, this was not until after it certified and provided a "clean" audit that was included in TeleTech's 2006 Form 10-K and in the Secondary Offering Registration Statement.

### Individual Defendants

9.      Defendant **KENNETH D. TUCHMAN** ("Tuchman") is, and during the Class Period was, Chief Executive Officer and Chairman of the Board of Directors, and was a Founder of the Company.  During the Class Period, defendant Tuchman signed and certified the Company's SEC filings, including but not limited to TeleTech's Form(s) 10-Q and its 2006 Form 10-K, and/or the materially false and misleading Registration Statement and joint

3

Proxy/Prospectus issued in connection with his registration and sale of over $209 million of his personally held Company shares - - shares which are believed to have been granted to defendant Tuchman illegally, and at prices below actual market, on a "back-dated" basis.

10.    Defendant **JOHN R. TROKA** ("Troka") is, and during the Class Period was, Chief Financial Officer, Principal Accounting Officer, and Executive Vice President of the Company. During the Class Period, defendant Troka signed and certified the Company's SEC filings, including but not limited to TeleTech's Form(s) 10-Q and its 2006 Form 10-K, and/or the materially false and misleading Registration Statement and joint Proxy/Prospectus issued in connection with the Secondary Public Offering of 5.75 million shares of common stock by defendant Tuchman, while in possession of material adverse non-public information about TeleTech.

11.    Defendants Tuchman and Troka, as well as the individuals identified below, are referred to collectively herein as the "Individual Defendants." The Individual Defendants are each strictly liable for the false statements contained in the materially false and misleading Registration Statement and Prospectus, as alleged herein, because those statements, along with certain of the other materially false and misleading statements made with scienter and identified herein, were "group-published" information. The Individual Defendants include the following:

| NAME | POSITION |
|---|---|
| **JAMES E. BARLETT** ("Barlett") | Director |
| **RUTH C. LIPPER** ("Lipper") | Director |
| **WILLIAM A. LINNENBRINGER** ("Linnenbringer") | Director |
| **SHRIKANT MEHTA** | |

("Mehta")                                    Director

**SHIRLEY YOUNG**
("Young")                                     Director

12.    Each of the Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein.  Accordingly, the Individual Defendants were also involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, and approved or ratified these statements, in violation of the federal securities laws.

13.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, was traded on the Nasdaq national market exchange (the "Nasdaq"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions made in connection with the issuance of common stock in March 2007 violated these specific requirements and obligations.

14.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various

SEC filings, press releases, and other public statements pertaining to the Company at the time of the Offering. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained therein.

**Secondary Offering Underwriter Defendants**

15.    In connection with the March 2007 Secondary Offering, defendants **CITIGROUP GLOBAL MARKETS INC.** ("Citigroup") and **MORGAN STANLEY & CO. INC.** ("Morgan Stanley") acted as joint book-running managers of the Offering, and as representatives of the Underwriters and/or as "Lead Underwriters" of the Offering - - distributing millions of shares of TeleTech stock to investors. Not including another 750,000 shares distributed upon exercise of the Underwriters' Over-Subscription Allotment Option, the distribution of SECONDARY OFFERING shares awarded Underwriters occurred as follows:

| Underwriter | Number of Shares |
|---|---|
| Citigroup Global Markets Inc. | 1,548,000 |
| Morgan Stanley & Co. Incorporated | 1,548.000 |
| Merrill Lynch, Pierce, Fenner & Smith, Inc. | 833,500 |
| Credit Suisse Securities (USA) LLC | 595,500 |
| Craig-Hallum Capital Group LLC | 295,000 |
| Janco Partners, Inc. | 180,000 |
| Total | 5,000,000 |

16.    In connection with the March 2007 Secondary Offering, the Underwriter Defendants, Citigroup and Morgan Stanley, were paid combined fees of at least $5.429 million, which were indirectly paid by purchasers of the Company's shares. The Underwriter Defendants

were paid at least $1.75375 per share in connection with the sale of the 5.75 million shares, including shares sold pursuant to the exercise of the Underwriter's Over-subscription Option.

17.     Shareholders were willing to, and did, pay these fees - - equal to almost 5% of the gross sales price - - to compensate the Underwriter Defendants for conducting a purported significant due diligence investigation into TeleTech. The Underwriter Defendants' due diligence investigation is a critical component of the Company's public offering, and it was supposed to provide investors with important safeguards and protections.

18.     The due diligence investigation that was required by the Underwriter Defendants included a detailed investigation into TeleTech's accounting and assumptions that extended well beyond a mere casual review of TeleTech's accounting, financial report and operational and financial controls. The failure of the Underwriter Defendants to conduct an adequate due diligence investigation was a substantial contributing factor leading to the harm complained of herein.

19.     In addition to the foregoing, because of the Underwriter Defendants' and Individual Defendants' positions with the Company, they all had access to the adverse undisclosed information about TeleTech's business, operations, products, operational trends, financial statements, markets, and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts, and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings, and committees thereof and via reports and other information provided to them in connection therewith.

20.    Each of the Individual Defendants and Underwriter Defendants is liable for making or allowing the inclusion of material false and misleading statements in the Secondary Offering Registration Statement.  In addition, the Individual Defendants and the Company also participated in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of TeleTech common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.

21.    The materially false and misleading statements contained in the Secondary Offering Registration Statement, and also those statements that defendants made with scienter during the Class Period:  (i) deceived the investing public regarding TeleTech's business, operations, management, and the intrinsic value of TeleTech common stock; (ii) enabled defendant Tuchman to register for sale and sell over $209 million of his privately held Company stock in connection with the March 2007 Secondary Offering; (iii) enabled TeleTech insiders to sell millions of dollars of their privately held TeleTech shares while in possession of material adverse non-public information about the Company; and (iv) caused plaintiff and other members of the Class to purchase TeleTech common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all those who purchased or otherwise acquired the common stock of TeleTech between February 8, 2007 and November 8, 2007, inclusive (the "Class") and who were damaged thereby; including those who purchased shares in connection with the Company's March 2007 Secondary Offering.  Excluded from the Class are defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

23.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, TeleTech common shares were actively traded on the Nasdaq.  As of May 4, 2007, the Company had over 70.72 million shares of common stock issued and outstanding. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by TeleTech or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

24.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

25.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

26.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of TeleTech; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

27.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Materially False and Misleading Statements
### Made By the Individual Defendants During the Class Period

28.    **"Record" 4Q & FY:06 Results Announced**. On February 7, 2007, after the close of trading, TeleTech published a release announcing results for the fourth quarter and year end December 31, 2006. This release stated, in part, the following:

### TeleTech Reports Record Fourth Quarter Results
### Fourth Quarter Revenue Grows 10.7% to a Record $337 Million
### EPS Grows 114% to 30 Cents

Operating Income Increases 177 % and Operating Margin Expands to 8.6 %

TeleTech Holdings, Inc, one of the largest global business process outsourcing (BPO) providers with a customer management focus, today announced financial results for the fourth quarter and fiscal year ended December 31, 2006…

* * *

*TeleTech exceeded its fourth quarter 2006 operating margin goal of 7 to 8 percent, reporting an 8.6 percent operating margin* compared to 3.4 percent in the year-ago quarter. The North American and International BPO segments combined had an operating margin of 10.0 percent. *Stock option expense included in income from operations for the current quarter was $1.9 million which lowered operating margin by 56 basis points.*

10

*Fully diluted earnings per share in the fourth quarter 2006 was 30 cents, up from 14 cents in the year ago quarter*. The current quarter EPS included a $3.3 million (5 cents per share) tax expense reduction related to recording the benefit of certain tax loss carry forwards.

\* \* \*

Solid Balance Sheet Continues to Fund Organic Growth and Share Repurchase Program

- As of year-end, TeleTech had cash and *cash equivalents of $60.5 million and total debt to equity of 20 percent.*

- TeleTech generated *$7.8 million of free cash flow* in the fourth quarter compared to negative free cash flow of ($22.1) million in the year-ago quarter.

- Capital expenditures were $14.3 million in the fourth quarter, up from $10.8 million in the year-ago quarter. Approximately 70 percent of this quarter's capital expenditures were related to growth in offshore locations with the balance for maintenance capital.

[Emphasis added.]

29. This release also quoted defendant Tuchman, as follows:

EXECUTIVE COMMENTARY

"*We are extremely pleased that TeleTech delivered another quarter of strong financial performance. This is our fifth consecutive quarter of double-digit revenue growth driven by our expanding array of service offerings, vertical industry expertise and global delivery capabilities*. Our revenue growth this quarter was combined with significant improvement in profitability as income from operations increased 177 percent," said Kenneth Tuchman, chairman and chief executive officer. *"This solid performance is the result of our outstanding global workforce and our carefully planned investments in proprietary technology and best operating practices* to further position TeleTech as the premier global outsourcing partner in the minds of our clients. As we begin the year, *we are focused on achieving both our 2007 and 2008 financial goals through continued top line growth and improving profitability."*

[Emphasis added.]

30. The Company's February 7, 2007 release also provided purported forward guidance, in part, as follows:

Business Outlook

- For 2007, TeleTech estimates revenue will grow approximately 15 percent over 2006 as it focuses on achieving its previously stated goal of reaching a $1.5 billion revenue run-rate by the fourth quarter 2007. Furthermore, ***TeleTech estimates fourth quarter 2007 operating margin will increase to 10 percent, excluding unusual charges, if any.***

- For 2008, TeleTech estimates revenue will grow between 12 and 15 percent and ***operating margin will improve by approximately 200 basis points over 2007.***

[Emphasis added.]

31.    **2006 Form 10-K.**  The same day that the Company announced these purported "record" setting results, defendants also filed with the SEC, pursuant to Form 10-K, the Company's full year 2006 financial results for the year ended December 31, 2006 signed by each of the Individual Defendants.  In addition to making substantially similar statements concerning the Company's operations and specific accounting practices and procedures as were contained in TeleTech's press releases, the Company's 2006 Form 10-K also stated, in part, the following:

**Critical Accounting Policies and Estimates**

***Management's discussion and analysis of its financial condition and results of operations are based upon our consolidated financial statements, which have been prepared in accordance with GAAP.*** The preparation of these financial statements requires us to make estimates and assumptions that affect the reported amounts of assets, liabilities, sales and expenses as well as the disclosure of contingent assets and liabilities. ***We regularly review our estimates and assumptions. These estimates and assumptions, which are based upon historical experience and on various other factors believed to be reasonable under the circumstances***, form the basis for making judgments about the carrying values of assets and liabilities that are not readily apparent from other sources. Reported amounts and disclosures may have been different had management used different estimates and assumptions or if different conditions had occurred in the periods presented. Below is a discussion of the policies that we believe may involve a high degree of judgment and complexity.

[Emphasis added.]

32.    **Controls.**    The Company's 2006 Form 10-K also contained statements concerning the Company's purported controls and procedures, which stated, in part, the following:

### ITEM 9A.  CONTROLS AND PROCEDURES

Evaluation of Disclosure Controls and Procedures

*We have established disclosure controls and procedures to ensure that information required to be disclosed in the reports that the Company files or submits under the Securities Exchange Act of 1934* ("Exchange Act") is recorded, processed, summarized and reported within the time periods specified in SEC rules and forms. *Our disclosure controls and procedures have also been designed to ensure that information required to be disclosed in the reports that the Company files or submits under the Exchange Act is accumulated and communicated to the Company's management*, including the principal executive officer and principal financial officer, to allow timely decisions regarding required disclosure.

Evaluation of Internal Control Over Financial Reporting

Pursuant to Section 404 of the Sarbanes-Oxley Act of 2002, we have included a report on management's assessment of the design and effectiveness of its internal control over financial reporting as part of this Annual Report on Form 10-K for the fiscal year ended December 31, 2006. Our independent registered public accounting firm also audited and reported on management's assessment of the effectiveness of internal control over financial reporting. Management's report and the independent registered public accounting firm's attestation report are included under the captions entitled "Management's Report on Internal Control Over Financial Reporting" and "Report of Independent Registered Public Accounting Firm on Internal Control Over Financial Reporting" in Item 15 of this Annual Report on Form 10-K and are incorporated herein by reference.

*Based on their evaluation as of December 31, 2006, our principal executive officer and principal financial officer of the Company have concluded that our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) are effective.*

Changes in Internal Control Over Financial Reporting

*There has been no change in our internal control over financial reporting* during the fourth quarter of 2006 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

[Emphasis added.]

33.    The 2006 Form 10-K also contained statements by defendants Tuchman and Troka that also purported to attest to the sufficiency of management's control over the Company's financial reporting, and the results of Management's Report thereon, as follows:

### MANAGEMENT'S REPORT ON INTERNAL CONTROL OVER FINANCIAL REPORTING

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Exchange Act Rules 13a-15(f) and 15d-15(f). *Under the supervision and with the participation of our management, including our Chief Executive Officer and Interim Chief Financial Officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2006* based on the framework in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). Based on that evaluation, *our management concluded that our internal control over financial reporting was effective as of December 31, 2006*.

Management's assessment of the effectiveness of our internal control over financial reporting as of December 31, 2006 has been audited by Ernst & Young, LLP, an independent registered public accounting firm, as stated in their report which is included elsewhere herein.

/s/ **KENNETH D. TUCHMAN**                    February 7, 2007
Kenneth D. Tuchman
Chief Executive Officer

/s/ **JOHN R. TROKA, JR.**                    February 7, 2007
John R. Troka, Jr.
Interim Chief Financial Officer

34.    The 2006 Form 10-K also contained statements regarding practice and procedures by which TeleTech valued its options and options grants, in part, as follows:

*Adoption of SFAS No. 123(R) and Equity-Based Compensation Expense*

During the first quarter of 2006, we adopted SFAS No. 123 (revised 2004) *"Share-Based Payment" ("SFAS 123(R)") applying the modified prospective method. SFAS 123(R) requires all equity-based payments to employees, including grants of employee stock options, to be recognized in the Consolidated Statement of Operations and Comprehensive Income based on the*

14

*grant date fair value of the award*. Prior to the adoption of SFAS 123(R), we accounted for equity-based awards under the intrinsic value method, which followed recognition and measurement principles of Accounting Principles Board Opinion No. 25, "Accounting for Stock Issued to Employees," and related interpretations and equity-based compensation was included as pro-forma disclosure within the notes to the financial statements.

*We did not modify the terms of any previously granted options in anticipation of the adoption of SFAS 123(R).*

Income from Operations for the year ended December 31, 2006 was adversely affected by the impact of equity-based compensation due to the implementation of SFAS 123(R). For the year ended December 31, 2006, we recorded expense of $6.9 million for equity-based compensation. We expect that equity-based compensation expense for fiscal 2007 and 2008 from existing awards will be approximately $6.6 million and $5.8 million, respectively. However, any future significant awards granted or required changes in the estimated forfeiture rates may impact this estimate. See Note 17 to the Consolidated Financial Statements for additional information.

[Emphasis added.]

35.    **Certifications.**  The 2006 Form 10-K also contained Certifications by defendants Tuchman and Troka which attested to the purported accuracy and completeness of the Company's financial and operational reports, as follows:

### CERTIFICATION
### [CHIEF EXECUTIVE OFFICER & CHIEF FINANCIL OFFICER]

1.    I have reviewed this Annual Report on Form 10-K of TeleTech Holdings, Inc.;

2.    Based on my knowledge, *this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading* with respect to the period covered by this report;

3.    Based on my knowledge, *the financial statements and other financial information included in this report, fairly present in all material respects the financial condition*, results of operations and cash flows of the registrant as of and for, the periods presented in this report;

4.    The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in

Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a.    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b.    ***Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles***;

    c.    ***Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation***; and

    d.    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during registrant's most recent fiscal quarter (the registrant's fourth quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

    5.    The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent function):

    a.    ***All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information***; and

    b.    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

By:    /s/  **KENNETH D. TUCHMAN**      Date: February 7, 2007
Kenneth D. Tuchman
Chairman and Chief Executive Officer (Principal Executive Officer)

\* \* \*

By:    /s/  **JOHN R. TROKA, JR.**               Date: February 7, 2007
John R. Troka, Jr.
Interim Chief Financial Officer (Principal Financial and Accounting Officer)

### Written Statement of Chief Executive Officer and Acting Chief Financial Officer Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 (18 U.S.C. Section 1350)

The undersigned, the Chief Executive Officer and the Acting Chief Financial Officer of TeleTech Holdings, Inc. (the "Company"), each hereby certifies that, to his knowledge on the date hereof:

   a.    The Annual Report on Form 10-K of the Company for the year ended December 31, 2006 filed on the date hereof with the Securities and Exchange Commission (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

   b.    ***The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.***

By:    /s/  **KENNETH D. TUCHMAN**               February 7, 2007
Kenneth D. Tuchman
Chief Executive Officer


By:    /s/  **JOHN R. TROKA, JR.**               February 7, 2007
John R. Troka, Jr.
Interim Chief Financial Officer

[Emphasis added.]

   36.    **Auditor's Report.** Included in the 2006 Form 10-K was also a report by the Company's Independent Public Accountants, Ernst & Young, that also that attested to the purported accuracy and completeness of TeleTech's financial and operational reports, as follows:

   **REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM**

   To the Stockholders and the
   Board of Directors of TeleTech Holdings, Inc.:

17

*We have audited the accompanying consolidated balance sheets of TeleTech Holdings, Inc. and subsidiaries as of December 31, 2006 and 2005* and the related consolidated statements of operations and comprehensive income, stockholders' equity and cash flows for each of the three years in the period ended December 31, 2006. These consolidated financial statements are the responsibility of TeleTech Holdings, Inc.'s management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. *We believe that our audits provide a reasonable basis for our opinion.*

*In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the consolidated financial position of TeleTech Holdings, Inc. and subsidiaries as of December 31, 2006 and 2005* and the consolidated results of their operations and their cash flows for each of the three years in the period ended December 31, 2006, *in conformity with U.S. generally accepted accounting principles.*

*As discussed in Note 1 to the consolidated financial statements, in fiscal year 2006, Teletech Holdings, inc. changed its method for stock-based compensation in accordance with the guidance provided in Statement of Financial Accounting Standards No. 123(R), "Share-Based Payment".*

*We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the effectiveness of TeleTech Holdings, Inc.'s internal control over financial reporting as of December 31, 2006,* based on criteria established in Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission and our report dated February 7, 2007 expressed an unqualified opinion thereon.

/s/  **ERNST & YOUNG LLP**

Denver, Colorado
February 7, 2007

* * *

18

**REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM
ON INTERNAL CONTROL OVER FINANCIAL REPORTING**

To the Stockholders and the
Board of Directors of TeleTech Holdings, Inc.:

*We have audited management's assessment, included in the section entitled Management's Report on Internal Control over Financial Reporting, that TeleTech Holdings, Inc. (the "Company") maintained effective internal control over financial reporting as of December 31, 2006*, based on criteria established in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (the COSO criteria). TeleTech Holdings, Inc.'s management is responsible for maintaining effective internal control over financial reporting and for its assessment of the effectiveness of internal control over financial reporting. *Our responsibility is to express an opinion on management's assessment and an opinion on the effectiveness of the Company's internal control over financial reporting based on our audit.*

We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects. Our audit included obtaining an understanding of internal control over financial reporting, evaluating management's assessment, testing and evaluating the design and operating effectiveness of internal control and performing such other procedures as we considered necessary in the circumstances. We believe that our audit provides a reasonable basis for our opinion.

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the company's assets that could have a material effect on the financial statements.

\* \* \*

*In our opinion, management's assessment that TeleTech Holdings, Inc. maintained effective internal control over financial reporting as of December 31, 2006, is fairly stated*, in all material respects, based on the COSO criteria. Also, in our opinion, TeleTech Holdings, Inc. maintained, in all material respects, effective internal control over financial reporting as of December 31, 2006, based on the COSO criteria.

*We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the consolidated balance sheets of TeleTech Holdings, Inc. and subsidiaries as of December 31, 2006 and 2005* and the related consolidated statements of operations and comprehensive income, stockholders' equity and cash flows for each of the three years in the period ended December 31, 2006 and our report dated February 7, 2007 expressed an unqualified opinion thereon.

/s/ **ERNST & YOUNG LLP**

Denver, Colorado
February 7, 2007

[Emphasis added.]

37.     The statements contained in TeleTech's February 7, 2007 release and those statements contained in the Company's 2006 Form 10-K, referenced above, were each materially false and misleading when made, and were known by defendants to be false at that time, or were recklessly disregarded as such thereby, for the following reasons, among others:

(a)     At the time of the Offering, it was not true that the Company had achieved purported "record" performance or operational results or had improving margins or cost controls when, in fact, throughout the Class Period, defendants had propped up the Company's results by failing to properly account for true compensation expenses and by improperly back-dating tens and possibly hundreds of millions of dollars in options that were given to key executives between 1999 and 2007;

(b)     At the time of the Offering, defendants had presented a financial statement and balance sheet that had each materially overstated the Company's profitability by under-

reporting the Company's true compensation expenses and employment taxes, as well as the Company's necessary reserves, by over-reporting TeleTech's earnings and gross margins and by failing to make proper, timely adjustments to the Company's operational and financial reports;

      (c)    Throughout the Class Period, it was also not true that TeleTech contained adequate systems of internal operational or financial controls such that TeleTech's reported financial statements were true, accurate or reliable;

      (d)    As a result of the foregoing, throughout the Class Period it also was not true that the Company's financial statements and reports were prepared in accordance with GAAP ad SEC rules; and

      (e)    As a result of the aforementioned adverse conditions which defendants failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to claim that the Company was operating according to plan or that TeleTech could achieve guidance sponsored and/or endorsed by defendants.

    38.    Despite Ernst & Young having provided a clean audit opinion on the Company for 2006, defendants announced on March 9, 2007 (the same day that the Company reported results for the second quarter of 2007) that Ernst & Young had contacted the Chairman of the Audit Committee of the Board of Directors of TeleTech two days prior and informed the Committee that it would not stand for re-election as the Company's outside auditors. That day, defendants also filed with the SEC, pursuant to Form 8-K, in part, the following statement:

Form 8-K for TELETECH HOLDINGS INC

Changes in Registrant's Certifying Accountant

Item 4.01 Change in Registrant's Certifying Accountant.

(a) *Previous Independent Registered Public Accounting Firm On May 7, 2007, the Chairman of the Audit Committee of the Board of Directors (the "Audit Committee") of TeleTech Holdings, Inc. (the "Company") was notified by Ernst & Young LLP ("Ernst & Young") that it is declining to stand for re-election as the Company's independent registered public accounting firm for the year ending December 31, 2007.* Ernst & Young will perform the procedures specified by the Public Company Accounting Oversight Board (United States) for a review of the interim financial information as described in AU 722, Interim Financial Information on the unaudited consolidated financial statements included in the Company's Quarterly Report on Form 10-Q for the quarter ended March 31, 2007. Ernst & Young completed its review on May 9, 2007. During the two years ended December 31, 2006 and the quarter ended March 31, 2007, *there were no disagreements between the Company and Ernst & Young on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure that, if not resolved to Ernst & Young's satisfaction, would have caused it to make reference to the matter in connection with its report on the Company's consolidated financial statements for the relevant year. Ernst & Young's audit reports on the Company's consolidated financial statements for the fiscal years ended December 31, 2005 and December 31, 2006 did not contain an adverse opinion or disclaimer of opinion, nor were they qualified or modified as to uncertainty, audit scope or accounting principles….*

[Emphasis added.]

39.    **"Record" 1Q:07 Results Announced.**    Also on May 9, 2007, TeleTech published a release announcing purported "record" setting financial results for the first quarter ended March 31, 2007.  This release stated, in part, the following:

### TeleTech Reports Record First Quarter Results
### Record First Quarter Revenue Grows More Than 17 Percent to $333 Million
### EPS Grows 200 Percent to 24 Cents

Operating Income Increases 185% and Operating Margin Expands to 8.6 Percent

TeleTech Holdings, Inc. (NASDAQ: TTEC), one of the largest and most geographically diverse global providers of business process outsourcing (BPO) solutions, today announced financial results for the first quarter 2007.

* * *

Income from operations in the first quarter 2007 increased 185 percent to $28.5 million or 8.6 percent of revenue, from $10.0 million or 3.5 percent of revenue in the year-ago quarter. *Equity compensation expense included in income from*

*operations for the current quarter was $2.9 million which lowered operating margin by approximately 90 basis points.*

*The BPO business had an operating margin of 10.0 percent, up from a 4.1 percent combined operating margin in the year ago quarter.*

Fully diluted earnings per share in the first quarter 2007 was 24 cents, up 200 percent from 8 cents in the year ago quarter.

* * *

Solid Balance Sheet Continues to Fund Organic Growth

- As of quarter-end, TeleTech had **cash and cash equivalents of $65.3 million and total debt to equity of approximately 12 percent.**

- TeleTech generated $**18.3 million of free cash flow** in the first quarter compared to $2.1 million in the year-ago quarter.

- Capital expenditures were $13.5 million in the first quarter, down from $14.6 million in the year-ago quarter. Approximately 80 percent of this quarter's capital expenditures were related to growth in offshore locations with the balance for maintenance.

[Emphasis added.]

40.    This release also quoted defendant Tuchman, in part, as follows:

EXECUTIVE COMMENTARY

"*We are extremely pleased to have delivered our sixth consecutive quarter of double-digit revenue growth while significantly increasing profitability as income from operations increased 185 percent. This strong performance is the direct result of our ability to convert our investments in new service offerings*, increased vertical industry expertise and growing global delivery capabilities into meaningful new revenue opportunities," said Kenneth Tuchman, chairman and chief executive officer. "*We continue to experience strong demand for our services, driven by our clients' increased desire for providers that can not only enhance their strategic capabilities but who can also provide a globally-integrated, high-quality front and back office solution*. With a strong start to the new year, we remain focused on *achieving both our 2007 and 2008 financial goals through continued top line growth and increasing profitability."*

[Emphasis added.]

41.     The May 9, 2007 release also provided purported forward-looking guidance, in

part, as follows:

Business Outlook

- •     For 2007, TeleTech estimates revenue will grow approximately 15 percent over 2006 as it focuses on achieving its goal of reaching a $1.5 billion revenue run-rate by the fourth quarter 2007. Furthermore, *TeleTech estimates fourth quarter 2007 operating margin will increase to 10 percent, excluding unusual charges, if any.*

- •     For 2008, TeleTech estimates revenue will grow between 12 and 15 percent and *operating margin will improve by approximately 200 basis points over 2007.*

[Emphasis added.]

42.     **1Q:07 Form 10-Q.**  Also on May 9, 2007, in an effort to continue to inflate the

price of TeleTech shares (and sustain such inflation), defendants filed the Company's 1Q:07

Form 10-Q for the quarter ended March 31, 2007 with the SEC; the 10-Q was signed and

certified by defendants Tuchman and Troka.   The 1Q:07 Form 10-Q continued to condition

investors to believe that TeleTech's disclosures were true and accurate, and that all necessary

and proper options charges, costs, expenses, and reserves had been taken, in part, as follows:

**Basis of Presentation**

*The accompanying unaudited Condensed Consolidated Financial Statements have been prepared without audit pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC"). The unaudited Condensed Consolidated Financial Statements reflect all adjustments (consisting only of normal recurring entries) which, in the opinion of Management, are necessary to present fairly the financial position of the Company as of March 31, 2007,* and the results of operations and cash flows of the Company for the three months ended March 31, 2007 and 2006. Operating results for the three months ended March 31, 2007 are not necessarily indicative of the results that may be expected for the fiscal year ending December 31, 2007.

The unaudited Condensed Consolidated Financial Statements should be read in conjunction with the Company's audited consolidated financial statements and

footnotes thereto included in the Company's Annual Report on Form 10-K for the year ended December 31, 2006.

[Emphasis added.]

43.    **Certifications.**  The Company's 1Q:07 Form 10-Q also contained Certifications by defendants Tuchman and Troka that continued to attest to the purported accuracy and completeness of the Company's financial and operational reports, in part, as follows:

**CERTIFICATION OF CHIEF EXECUTIVE OFFICER
PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

The undersigned, the Chief Executive Officer of TeleTech Holdings, Inc. (the "Company"), hereby certifies that, to his knowledge on the date hereof:

(a)    the Form 10-Q of the Company for the quarter ended March 31, 2007 filed on the date hereof with the Securities and Exchange Commission (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Securities and Exchange Act of 1934; and

(b)    *the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

By:    /s/ **KENNETH D. TUCHMAN**                    Date: May 9, 2007
       Kenneth D. Tuchman
       Chairman and Chief Executive Officer

**CERTIFICATION OF CHIEF FINANCIAL OFFICER
PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

The undersigned, the Interim Chief Financial Officer of TeleTech Holdings, Inc. (the "Company"), hereby certifies that, to his knowledge on the date hereof:

(a)    the Form 10-Q of the Company for the quarter ended March 31, 2007 filed on the date hereof with the Securities and Exchange Commission (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Securities and Exchange Act of 1934; and

(b)    *the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

By:  /s/ **JOHN R TROKA, JR.**                Date: May 9, 2007
     John R. Troka, Jr.
     Interim Chief Financial Officer

[Emphasis added.]

44.    The statements made by defendants and contained in TeleTech's May 9, 2007

release and those statements contained in TeleTech's 1Q:07 Form 10-Q, were each materially

false and misleading and were known by defendants to be materially false and misleading at that

time, or were recklessly disregarded as such, for the reasons stated herein in ¶¶37(a)-(e), *supra*.

45.    **"Record" 2Q:07 Results Announced.**  On August 6, 2007, TeleTech published a

release again announcing purported "record" setting financial results for the second quarter,

ended June 30, 2007.  This release stated, in part, the following:

**TeleTech Reports Second Quarter Results**
**Record Second Quarter Revenue Grows 15 Percent to $330 Million; Offshore**
**BPO Revenue Grows 44%**
**ROIC Doubles to 28 Percent**

TeleTech Holdings, Inc., one of the largest and most geographically diverse
global providers of business process outsourcing (BPO) solutions, today
announced financial results for the second quarter 2007….

* * *

Income from operations in the second quarter 2007 increased 22 percent to $15.4
million from $12.7 million in the year-ago quarter. Excluding asset impairment
and restructuring charges, income from operations increased 122 percent to $29.2
million, or 8.9 percent of revenue. *Equity compensation expense included in
income from operations for the current quarter was $3.2 million and lowered
operating margin by approximately 100 basis points.*

*GAAP earnings per share in the second quarter 2007 was 13 cents, compared to
17 cents in the year-ago quarter.* Excluding the $13.8 million asset impairment
and restructuring charge in the current quarter as well as a $5.2 million, or an
approximate 6 cent per share, tax benefit in the year-ago quarter, non-GAAP
earnings per share increased 118 percent to 24 cents in the current quarter from 11
cents in the year-ago quarter.

*Return on invested capital, defined as earnings before asset impairment charges, interest and taxes (EBIT) divided by average shareholders' equity, was 28 % at June 30, 2007, double the 14 % at the end of the year ago quarter.*

\* \* \*

Solid Balance Sheet Continues to Fund Organic Growth

- As of quarter-end, TeleTech had **cash and cash equivalents of $60.1 million and a total debt to equity ratio of approximately 13 percent.**

- TeleTech generated **$3.4 million of free cash flow** in the second quarter compared to negative ($6.7) million in the year-ago quarter.

- Capital expenditures were $15.5 million in the second quarter. Approximately 80 percent of this quarter's capital expenditures were for growth related needs, which included the deployment of 1,300 new workstations, with the balance for maintenance capital.

[Emphasis added.]

46.    This release also quoted defendant Tuchman, in part, as follows:

EXECUTIVE COMMENTARY

"As a result of significant contract awards from new and expanded business, we anticipate adding a record 5,000 workstations in six geographic locations during the second half of the year," said Kenneth Tuchman, chairman and chief executive officer. ***"Our demand continues to be driven by an overwhelming flight to quality as more companies shift their focus from simply reducing costs to enhancing the customer experience**. This plays directly to our 25 years of experience and industry-leading delivery capabilities, and has resulted in many companies exiting their current BPO providers or their captive operations and selecting TeleTech to further their business goals."

Tuchman continued, "***Our financial results illustrate the solid execution of the TeleTech team in providing a globally integrated, high-quality front and back office solution and the success of our significant investments in new service offerings and global delivery capabilities over the past five years**. Our second quarter 2007 results represent our seventh consecutive quarter of double-digit revenue growth, while **increasing income from operations by 122 percent year over year,** excluding this quarter's impairment and restructuring charges. **We remain committed to continued profitable growth and are confident we can meet our 2007 and 2008 financial goals**."

[Emphasis added.]

47.    The August 6, 2007 release also provided purported forward-looking guidance, in part, as follows:

Business Outlook

- TeleTech *reaffirmed its previous full year 2007 business outlook*, estimating revenue will grow approximately 15% over 2006 as it expects to achieve a $1.5 billion revenue run-rate and *10 percent operating margin*, excluding unusual charges, if any, by the fourth quarter 2007.

- For 2008, TeleTech reaffirmed its expectation that revenue will grow between 12 and 15 percent and *operating margin will improve by approximately 200 basis points over 2007*.

[Emphasis added.]

48.    **2Q:07 Form 10-Q.**  Also on August 6, 2007, defendants filed with the SEC the Company's 2Q:07 Form 10-Q for the quarter ended June 30, 2007, signed and certified by defendants Tuchman and Troka.  The 2Q:07 Form 10-Q continued to condition investors to believe that TeleTech's disclosures were true and accurate, and that all necessary and proper options expenses, charges, expenses, and reserves had been taken, in part, as follows:

**Basis of Presentation**

*The accompanying unaudited Condensed Consolidated Financial Statements have been prepared without audit and do not include all of the disclosures required by accounting principles generally accepted in the U.S.*, pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC"). The unaudited Condensed Consolidated Financial Statements do reflect all adjustments (consisting only of normal recurring entries) which, *in the opinion of Management, are necessary to present fairly the consolidated financial position of the Company as of June 30, 2007,* and the consolidated results of operations and cash flows of the Company for the three and six months ended June 30, 2007 and 2006....

These unaudited Condensed Consolidated Financial Statements should be read in conjunction with the Company's audited Consolidated Financial Statements and footnotes thereto included in the Company's Annual Report on Form 10–K for the year ended December 31, 2006.

[Emphasis added.]

49.    **Certifications.**  The Company's 2Q:07 Form 10-Q also contained Certifications by defendants Tuchman and Troka that continued to attest to the purported accuracy and completeness of the Company's financial and operational reports, as follows:

**CERTIFICATION OF CHIEF EXECUTIVE OFFICER**
**PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

The undersigned, the Chief Executive Officer of TeleTech Holdings, Inc. (the "Company"), hereby certifies that, to his knowledge on the date hereof:

(a)    the Form 10-Q of the Company for the quarter ended June 30, 2007 filed on the date hereof with the Securities and Exchange Commission (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Securities and Exchange Act of 1934; and

(b)    *the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

By:  /s/ **KENNETH D. TUCHMAN**                    Date: August 6, 2007
Kenneth D. Tuchman
Chairman and Chief Executive Officer

**CERTIFICATION OF CHIEF FINANCIAL OFFICER**
**PURSUANT TO SECTION 906 OF THE SARBANES–OXLEY ACT OF 2002**

The undersigned, the Interim Chief Financial Officer of TeleTech Holdings, Inc. (the "Company"), hereby certifies that, to his knowledge on the date hereof:

(a)    the Form 10–Q of the Company for the quarter ended June 30, 2007 filed on the date hereof with the Securities and Exchange Commission (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Securities and Exchange Act of 1934; and

(b)    *the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.*

By:  /s/ **JOHN R. TROKA, JR.**                    Date: August 6, 2007
John R. Troka, Jr.
Interim Chief Financial Officer

[Emphasis added.]

50.    The statements made by defendants and contained in TeleTech's August 6, 2007 release and those statements contained in TeleTech's 2Q:07 Form 10-Q, were each materially false and misleading and were known by defendants to be materially false and misleading at that time, or were recklessly disregarded as such, for the reasons stated herein in ¶¶37(a)-(e), *supra*.

### Materially False And Misleading Statements Contained In
### The Secondary Offering Proxy-Prospectus And Registration Statement

51.    During the Class Period, on or about March 30, 2007, as shares of the Company traded at artificially inflated prices above $35.00 per share, defendant Tuchman was allowed, and defendants assisted him, in registering 5.75 million shares of his privately owned TeleTech shares for sale. Priced at $36.50 each, this registration allowed defendant Tuchman to sell over $209.87 million of his privately held TeleTech shares.

52.    The TeleTech Public Offering was made through an underwriting syndicate led by Morgan Stanley and Citibank, which acted as Joint Book-Runners and Co-Lead Managers of the March 2007 Secondary Offering. In connection with the Secondary Offering, on March 30, 2007, defendants also filed with the SEC, pursuant to Form 424B7, a copy of a joint Proxy-Prospectus. In addition to describing the terms and conditions of the Offering itself, the Secondary Offering Proxy-Prospectus also represented the Company's financial condition at that time, stating, in part, as follows:

### Summary Consolidated Financial Data

| [Notes Omitted] | As of and for the Years Ended December 31, | | |
| --- | --- | --- | --- |
| | 2004 | 2005 | 2006 |
| | (In thousands except per share amounts) | | |
| **Statement of Operations Data** | | | |
| Revenue | $1,052,690 | $1,086,673 | $   1,211,297 |
| Cost of services | (774,521) | (812,174) | (885,602) |
| Depreciation and amortization | (59,378) | (53,317) | (51,429) |
| Other operating expenses | (170,323) | (189,646) | (201,421) |
| Income from operations | 48,468 | 31,536 | 72,845 |
| Other income (expense) | (14,263) | 680 | (4,459) |
| Provision for income taxes | (9,464) | (2,516) | (14,676) |

| Minority interest | | (738) | | (1,542) | | (1,868) |
|---|---|---|---|---|---|---|
| Net income | $ | 24,003 | $ | 28,158 | $ | 51,842 |
| Weighted average shares outstanding | | | | | | |
| Basic | | 74,751 | | 72,121 | | 69,184 |
| Diluted | | 76,109 | | 73,631 | | 70,615 |
| Net income per share | | | | | | |
| Basic | $ | 0.32 | $ | 0.39 | $ | 0.75 |
| Diluted | $ | 0.32 | $ | 0.38 | $ | 0.73 |
| **Balance Sheet Data** | | | | | | |
| Cash and cash equivalents | $ | 75,066 | $ | 32,505 | $ | 60,484 |
| Total assets | $ | 496,795 | $ | 522,172 | $ | 658,716 |
| Total debt | | — | $ | 26,700 | $ | 65,000 |

53.     The financial statements and reports presented in the Secondary Offering Prospectus were required to be prepared in conformity with Generally Accepted Accounting Principals, SEC audit and accounting rules, and with the Company's own stated reporting and disclosure controls and procedures.

54.     Unbeknownst to investors, however, the Secondary Offering Registration Statement and Prospectus were materially false and misleading and contained untrue statements of material fact and omitted to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Specifically, the Company's statements regarding the Company's financial results were not true and accurate because TeleTech's results were not prepared in accordance with GAAP or SEC accounting rules because they did not properly account for the tens or hundreds of millions of dollars of back-dated, improperly reported, and unreserved employee stock options - - including options that were granted to, and sold by, defendant Tuchman.

55.     GAAP consists of those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at the particular time.  Regulation S-X, to which the Company is subject as a registrant under the Exchange Act, 17 C.F.R.  210.4-01(a)(1), provides that financial statements filed with the SEC

which are not prepared in compliance with GAAP, are presumed to be misleading and inaccurate. SEC Rule 13a-13 requires issuers to file quarterly reports.

56.     However, pursuant to GAAP and pursuant to SEC Rule 12b-20, the Company's periodic reports must contain information that is necessary to make the required statements, **in light of the circumstances under which they are made,** **not misleading**.  In addition, Item 303 of Regulation S-K requires that, for interim periods, the Management Division and Analysis Section ("MD&A") must include, among other things, **a discussion of any material changes in the registrant's results of operations** with respect to the most recent fiscal year-to-date period for which an income statement is provided.

57.     **Instructions to Item 303 require that the this discussion identify any significant elements of registrant's income or loss from continuing operations that are** **not** **necessarily representative of the registrant's ongoing business**.     Item 303(a)(2)(ii) to Regulation S-K requires the following discussion in the MD&A of a company's publicly filed reports with the SEC:

> *Describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations. If the registrant knows of events that will cause a material change in the relationship between costs and revenues (such as known future increases in costs of labor or materials or price increases or inventory adjustments), the change in relationship shall be disclosed*.

Paragraph 3 of the Instructions to Item 303 states in relevant part:

> *The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition*. This would include descriptions and amounts of (A) matters that would have an impact on future operations and have not had an impact in the past. .

[Emphasis added.]

58.     The GAAP requirement for recognition of an adequate provision for foreseeable costs and an associated allowance applies to interim financial statements as required by Accounting Principles Board Opinion No. 28.  Paragraph 17 of this authoritative pronouncement states that:

> The amounts of certain costs and expenses are frequently subjected to year-end adjustments even though they can be reasonably approximated at interim dates. ***To the extent possible such adjustments should be estimated and the estimated costs and expenses assigned to interim periods so that the interim periods bear a reasonable portion of the anticipated annual amount.***

[Emphasis added.]

59.     The Company's financial statements contained in the March 2007 Secondary Offering Registration Statement and Prospectus were presented in a manner that violated the principles of fair financial reporting and the following GAAP provisions, among others:

(a)     The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Concepts No. 1).

(b)     The principle that financial reporting should provide information about an enterprise's financial performance during a period (FASB Statement of Concepts No. 1).

(c)     The principle that financial reporting should be reliable in that it represents what it purports to represent (FASB Statement of Concepts No. 2).

(d)     The principle of completeness, which means that nothing material is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions (FASB Statement of Concepts No. 2).

(e)     The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered (FASB Statement of Concepts No. 2).

(f)    The principle that contingencies and other uncertainties that affect the fairness of presentation of financial data at an interim date shall be disclosed in interim reports in the same manner required for annual reports (APB Opinion No. 28).

(j)    The principle that disclosures of contingencies shall be repeated in interim and annual reports until the contingencies and have been removed, resolved, or have become immaterial (APB Opinion No. 28).

(k)    The principle that management should provide commentary relating to the effects of significant events upon the interim financial results (APB Opinion No. 28).

60.    In addition, at the time of the March 2007 Secondary Offering, defendants also violated SEC disclosure rules and the Company's own stated disclosure policies and procedures, as follows:

(a)    in violation of Item 303 of Regulation S-K under the federal securities laws (17 C.F.R. 229.303), defendants failed to disclose the existence of known trends, events, or uncertainties that they reasonably expected would have a material, unfavorable impact on net revenues or income or that were reasonably likely to result in the Company's liquidity decreasing in a material way; and that failure to disclose the information rendered the statements that were made during at the time of the March 2007 Secondary Offering, materially false and misleading; and

(b)    by failing to file financial statements with the SEC that conformed to the requirements of GAAP, such financial statements were presumptively misleading and inaccurate pursuant to Regulation S-X, 17 C.F.R. §210.4-01(a)(1).

61.    In the March 2007 Secondary Offering Registration Statement and Prospectus, defendants were required to disclose the existence of the material facts described herein - -

including having failed to properly account for tens or millions, or hundreds of millions, of dollars in under-reported compensation expenses as a result of years of backdating options. Defendants and the Company failed to make such disclosures and failed to properly account for or properly report its financial statements in conformity with GAAP. Defendants knew, or were reckless or negligent in not knowing, the facts which indicated that the Secondary Offering Registration Statement and Prospectus which were disseminated to the investing public, were materially false and misleading for the reasons set forth herein.

62.     Had the true financial position of the Company been reported, along with the Company's true compensation costs and options grant dates, defendants would not have been able to sell 27.5 million shares TeleTech common stock for gross proceeds of almost $210 million - - if at all.

## THE TRUE FINANCIAL AND OPERATIONAL CONDITION
## OF TELETECH IS BELATED DISCLOSED

63.     On November 8, 2007, the final day of the Class Period, defendants shocked investors by announcing that TeleTech was conducting a "REVIEW OF EQUITY-BASED COMPENSATION PRACTICES AND LIKELY RESTATEMENT OF PREVIOUS ISSUED FINANCIAL STATEMENTS" would be required - - possibly as far back as 1999. The release published by defendants that day stated, in part, the following:

**REVIEW OF EQUITY-BASED COMPENSATION PRACTICES AND LIKELY
RESTATEMENT OF PREVIOUSLY ISSUED FINANCIAL STATEMENTS**

TeleTech announced that it will file a Notification of Late Filing on Form 12b-25 with the Securities and Exchange Commission indicating that it will not meet the prescribed deadline for filing its Quarterly Report on Form 10-Q for the quarter ended September 30, 2007 due to a review of TeleTech's historical stock option and other equity-based compensation grant practices being conducted by the Company's Audit Committee. The review, which was initiated by the Company during the third quarter, is being conducted with the assistance of independent legal counsel to the Audit Committee and outside accounting experts.

Although TeleTech believes that significant progress has been made in the review, it is not complete. ***Based on the work conducted so far, management presently believes that it will be required to incur additional non-cash compensation charges for prior periods and that restatement of previous interim and annual financial statements for the periods 1999 through 2007 is likely***. There also may be an impact on the current fiscal year's results of operations including those reported in this release. Accordingly, ***management and the Audit Committee concluded on November 8, 2007 that TeleTech's financial statements for the periods 1999 through 2006 and the first and second quarters of 2007 should not be relied upon…..***

[Emphasis added.]

64.      At that time, investors were also amazed by defendants' sudden disclosure that TeleTech would likely be forced to take tens of millions, or possibly hundreds of millions, of dollars in charges and reserves, and that the Company would be forced to restate almost a full decade of financial results to account for the Company's true employment costs, expenses, reserves, payroll taxes, fines and penalties.

65.      Accordingly, the following day, November 9, 2007, shares of TeleTech fell from a prior day's closing price of $22.61 per share, to an intra-day and 52-week trading low of $18.76 per share - - an immediate decline of over 17%. That day, over 4.13 million shares traded as TeleTech shares fell to a mere half of the $36.50 price at which defendant Tuchman liquidated almost $210 million of his personally held TeleTech shares at the end of March 2007.

## CAUSATION AND ECONOMIC LOSS

66.      Defendants' publication of materially false and misleading statements at the beginning of the Class Period allowed defendant Tuchman to sell over $209.87 million of common stock to the public in the March 2007 Secondary Offering.  Thereafter, during the remainder of the Class Period, these false statements also had the intended effect of causing TeleTech's shares to trade at artificially inflated levels.  Moreover, as direct result of defendants'

36

publication of these false statements, during the Class Period shares of the Company traded to a high of over $40.00 per share soon after the Secondary Offering in early-April 2007.

67.    Contrary to the positive statements made by defendants during the Class Period, or contained in the Secondary Offering Registration Statement and Prospectus, on November 8, 2007, defendants revealed that the Company would come nowhere near achieving guidance previously sponsored and/or endorsed by defendants, and that TeleTech would be forced to take large charges for its impaired assets and lack of reserves. That day, defendants reported that the Company could be forced to restate its financial results as far back as 1999 as a result of failing to properly account for tens or possibly hundreds of millions of back-dated and improperly priced options. These belated disclosures had an immediate, adverse impact on the price of TeleTech shares.

68.    Accordingly, the following day, November 9, 2007, shares of TeleTech fell from a prior day's closing price of $22.61 per share, to an intra-day and 52-week trading low of $18.76 per share - - an immediate decline of over 17%. That day, over 4.13 million shares traded as TeleTech shares lost nearly half their value from the $36.50 price at which defendant Tuchman liquidated almost $210 million of his personally held TeleTech shares at the end of March 2007.

69.    This dramatic share price decline eradicated much of the artificial inflation from TeleTech's share price and caused real economic loss to investors who purchased this stock during the Class Period and/or in connection with the Secondary Offering. The decline in TeleTech's stock price at the end of the Class Period was a direct result of the nature and extent of defendants' illegal and improper conduct being revealed to investors and to the market. The timing and magnitude of TeleTech's stock price decline negates any inference that the losses

suffered by plaintiff and the other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or even Company-specific facts unrelated to defendants' fraudulent conduct.

## ADDITIONAL SCIENTER ALLEGATIONS

70.    As alleged herein, defendants acted with scienter in that each defendant knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents in primary violation of the federal securities laws.  As set forth elsewhere herein in detail, defendants participated in the fraudulent scheme alleged herein by virtue of their receipt of information reflecting the true facts regarding TeleTech, their control over and/or receipt and/or modification of TeleTech's allegedly materially misleading misstatements, and/or their associations with the Company which made them privy to confidential proprietary information concerning TeleTech.

71.    Defendants were motivated to materially misrepresent to the SEC and investors the true financial condition of the Company because their illegal course of conduct:  (i) deceived the investing public regarding TeleTech's business, operations, management and the intrinsic value of TeleTech common stock; (ii) enabled defendants to register for sale with the SEC over $209 million of Company stock in connection with the March 2007 Secondary Offering; (iii) enabled TeleTech insiders to sell millions of dollars of their privately held TeleTech shares while in possession of material adverse non-public information about the Company; and (iv) caused plaintiff and other members of the Class to purchase TeleTech common stock at artificially inflated prices.

72.    In addition to the foregoing, during the Class Period, while in possession of material adverse non-public information about the Company, defendant Linnenbringer who also served as Chairman of the Audit Committee, and defendant Metha who also served as Chairman of the Compensation Committee, liquidated material amounts of their personally held Company stock.  In fact, on May 29, 2007, defendant Metha disposed of 85,000 shares of his personally held Company stock while in possession of material adverse non-public information at prices as high as $33.07 per share to realize gross proceeds of over $2.81 million.  Later, on August 14, 2007, defendant Linnenbringer also disposed of 50,100 shares of his personally held Company stock while in possession of material adverse non-public information, in a non-open market transaction (presumably selling shares back directly to the Company), at a price of at least $33.98 per share to realize gross proceeds of over $1.702 million.

73.    These sales by defendants Metha and Linnenbringer were unusual in their timing and their amounts.  For defendant Linnenbringer, the sale of 50,100 shares represented the liquidation of 100% of his interest in the Company.  For defendant Metha, the sale of 85,000 shares represented the liquidation of over 80% of his personal TeleTech holdings.

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

74.    At all relevant times, the market for TeleTech's common stock was an efficient market for the following reasons, among others:

(a)    TeleTech's stock met the requirements for listing and was listed and actively traded on the Nasdaq national market exchange, a highly efficient and automated market;

(b)    As a regulated issuer, TeleTech filed periodic public reports with the SEC and the Nasdaq;

(c)    TeleTech regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    TeleTech was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

75.    As a result of the foregoing, the market for TeleTech securities promptly digested current information regarding TeleTech from all publicly available sources and reflected such information in TeleTech stock price. Under these circumstances, all purchasers of TeleTech common stock during the Class Period suffered similar injury through their purchase of TeleTech common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

76.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular

40

forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of TeleTech who knew that those statements were false when made.

## BASIS OF ALLEGATIONS

77.    Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of TeleTech's SEC filings, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## COUNT I

### (Against All Defendants)

### For Violation of Section 11 of the Securities Act

78.    Plaintiff incorporates by reference each and every allegation contained above, as if set forth herein only to the extent, however, that such allegations do *not* allege fraud, scienter or the intent of the defendants to defraud plaintiff or members of the Class.  This count is predicated upon defendants strict liability for making false and materially misleading statements in the March 2007 Secondary Offering Registration Statement and Proxy-Prospectus.  This Count is asserted by plaintiff against all defendants by and on behalf of persons who acquired shares of the Company pursuant to the false Registration Statement and Proxy Statement issued in connection with the March 2007 Secondary Offering.

79.    TeleTech is the issuer of the stock issued via the false Registration Statement and Proxy-Prospectus.  As such, TeleTech is strictly liable for each false and misleading statement contained therein.

80.    The defendants identified in paragraphs 9, 10 and 15, *supra.*, are each signatories of the Registration Statement or Underwriters of the March 2007 Secondary Offering, therefore, each of these defendants had a duty to make a reasonable investigation of the statements contained in the Registration Statement and Proxy-Prospectus to ensure that said statements were true and that there was no omission to state any material fact required to be stated in order to make the statements contained therein not misleading.    In the exercise of reasonable care, defendants should have known of the material misstatements and omissions contained in the Registration Statement and Proxy-Prospectus and also should have known of the omissions of material fact necessary to make the statements made therein not misleading.    As such, each of these defendants are liable to plaintiff and the Class.

81.    Each of the defendants identified in Count I issued, caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public which were contained in the Proxy Statement with misrepresented or failed to disclose, *inter alia*, the facts set forth above.    By reasons of the conduct alleged herein, each defendant violated, and/or controlled a person who violated § 11 of the Securities Act.    As a direct and proximate result of defendants' wrongful conduct, the price for the TeleTech common stock sold in the March 2007 Secondary Offering was artificially inflated and plaintiff and the Class suffered substantial damages in connection with their purchase of TeleTech common stock.

82.    Plaintiff and other members of the Class acquired their TeleTech stock without knowledge of the untruths and/or omissions alleged herein.    Plaintiff and the other members of the Class were thus damaged by defendants' misconduct and by the material misstatements and omissions of the aforementioned Registration Statement and Proxy-Prospectus.

83.    This action was brought within one year after the discovery of the untrue statements and omissions and within three years after the March 2007 Secondary Offering of TeleTech common stock.

## COUNT II

### (Against The Individual Defendants)

### For Violation of Section 15 of the Securities Act

84.    Plaintiff incorporates by reference each and every allegation contained above as if set forth herein. This Count is asserted against the Individual Defendants.

85.    Throughout the Class Period, the Individual Defendants acted as controlling persons of TeleTech within the meaning of §15 of the Securities Act. By reason of their stock ownership, senior management positions and/or directorships at the Company, as alleged above, these defendants, individually and acting pursuant to a common plan, had the power to influence and exercised the same to cause TeleTech to engage in the unlawful acts and conduct complained of herein.

86.    By reason of such conduct, the defendants named in this Count are liable pursuant to §15 of the Securities Act. As a direct and proximate result of their wrongful conduct, plaintiffs and the Class suffered damages in connection with their acquisition of TeleTech common stock.

//

//

//

## COUNT III

### (Against All Defendants)

### Violation of Section 12(a)(2) of the Securities Act

87.    Plaintiff repeats and realleges each and every allegation contained above.

88.    This Count is brought by plaintiff pursuant to Section 12(a)(2) of the Securities Act on behalf of all purchasers of TeleTech shares in connection with and traceable to the March 2007 Secondary Offering.  This cause of action is brought against all defendants.

89.    Defendants were sellers, offerors, underwriters and/or solicitors of sales of the TeleTech shares  offered pursuant to the Secondary Offering Registration Statement and Proxy-Prospectus.

90.    The TeleTech Secondary Offering Registration Statement and Proxy-Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.  Defendants' actions of solicitation included participating in the preparation of the false and misleading Proxy-Prospectus and Registration Statement.

91.    The defendants owed to the purchasers of TeleTech shares which were sold in the March 2007 Secondary Offering the duty to make a reasonable and diligent investigation of the statements contained in the Proxy-Prospectus and Registration Statement, to insure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  These defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the Offering materials as set forth above.

92.    Plaintiff and other members of the Class purchased or otherwise acquired TeleTech shares pursuant to and traceable to the defective Proxy-Prospectus. Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Proxy-Prospectus and Registration Statement.

93.    Plaintiff, individually and representatively, hereby offer to tender to defendants those securities which plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon.

94.    By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated, §12(a)(2) of the Securities Act. Accordingly, plaintiff and members of the Class who hold TeleTech shares purchased in the March 2007 Secondary Offering have the right to rescind and recover the consideration paid for their TeleTech shares and, hereby elect to rescind and tender their TeleTech shares to the defendants sued herein. Plaintiff and Class members who have sold their TeleTech shares are entitled to rescissory damages.

95.    Less than three years elapsed from the time that the securities upon which this Count is brought were sold to the public to the time of the filing of this action. Less than one year elapsed from the time when plaintiff discovered or reasonably could have discovered the facts upon which this Count is based to the time of the filing of this action.

//

//

## COUNT IV

### (Against the Company, Individual Defendants and Auditor Defendant)

### Violation Of Section 10(b) Of The Exchange Act
### And Rule 10b-5 Promulgated Thereunder

96.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

97.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did:  (i) deceive the investing public regarding TeleTech's business, operations, management and the intrinsic value of TeleTech common stock; (ii) enable defendant Touche to register for sale and sell over $209 million of defendant Tuchman's privately held Company stock, in connection with the March 2007 Secondary Offering; (iii) enable TeleTech insiders to sell millions of dollars of their privately held TeleTech shares while in possession of material adverse non-public information about the Company; and (iv) caused plaintiff and other members of the Class to purchase TeleTech common stock at artificially inflated prices.

98.     In furtherance of this unlawful scheme, plan and course of conduct, defendants, jointly and individually (and each of them) took the actions set forth herein.

99.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for TeleTech's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All defendants are sued either as primary

participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

100.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of TeleTech as specified herein.

101.    These defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of TeleTech's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about TeleTech and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of TeleTech common stock during the Class Period.

102.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or independent auditors or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed

significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

103.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts.  Such defendants' material misrepresentations and/or omissions were done knowingly or with reckless disregard for the purpose and effect of concealing TeleTech's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by defendants' overstatements and misstatements of the Company's business, operations, and earnings throughout the Class Period, defendants either had actual knowledge of the misrepresentations and omissions alleged or were reckless in failing to obtain such knowledge.

104.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of TeleTech common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of TeleTech's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired

TeleTech common stock during the Class Period at artificially high prices and were damaged thereby.

105.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that TeleTech was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their TeleTech common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

106.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

107.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## COUNT V

### (Against the Individual Defendants)
### Violation Of Section 20(a) Of The Exchange Act

108.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

109.    The Individual Defendants acted as controlling persons of TeleTech within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

110.   In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

111.   As set forth above, TeleTech and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.   Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff, and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 and any appropriate state law remedies to assure that the Class has an effective remedy; and

E.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 25, 2008                           Respectfully Submitted,

Kim E. Miller  (KM-6996)
**KAHN GAUTHIER SWICK, LLC**
12 East 41th Street – 12 Floor
New York, NY 10017
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

- and -

Lewis Kahn
**KAHN GAUTHIER SWICK, LLC**
650 Poydras Street - Suite 2150
New Orleans, LA 70130
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

**Attorneys for Plaintiff & the Class**

51

## CERTIFICATION IN SUPPORT OF APPLICATION FOR LEAD PLAINTIFF

_Donald R. Beasley_ (name) ("plaintiff") declares, as to the claims asserted under the federal securities law, that:

　　1.　　Plaintiff has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws and plaintiff is willing to serve as a lead plaintiff in this case and all other related cases that may be consolidated with it.

　　2.　　Plaintiff did not purchase securities of TeleTech Holdings, Inc., at the direction of counsel or in order to participate in a private action under the federal securities laws.

　　3.　　Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

　　4.　　During the Class Period, plaintiff has executed transactions in the securities of TeleTech Holdings, Inc. as follows. See Attached Schedule.

　　5.　　In the last three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

　　6.　　Plaintiff will not accept payment for serving as a lead plaintiff beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

　　　　I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: _01-24_____, 2008

_Donald R. Beasley_
Plaintiff

Name of plaintiff, _DONALD R. BEASLEY_
Schedule of plaintiff's Transaction(s) in
TeleTech Holdings, Inc.

Purchase(s):

| Date | Units | Price |
|------|-------|-------|
| 04-05-07 | 1000 | 39.50 |
| 04-30-07 | 2000 | 38.75 |

Salo(s):

| Date | Units | Price |
|------|-------|-------|
| 08/22/07 | 2623 | 31.00 |
| 08/22/07 | 377 | 30.6401 |